2016 UT App 246

## THE UTAH COURT OF APPEALS

VAL COOPER AND RICHARD COOPER,
Appellees,
*v.*
NATE DRESSEL AND JEN DRESSEL,
Appellants.

Memorandum Decision
No. 20150322-CA
Filed December 22, 2016

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 140401244

Jon M. Hogelin and Benjamin T. Lakey, Attorneys
for Appellants

Tyler S. Foutz, Attorney for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES GREGORY K. ORME and DAVID N.
MORTENSEN concurred.

CHRISTIANSEN, Judge:

¶1      Nate Dressel and Jen Dressel challenge the district court's
denial of their Utah Rule of Civil Procedure 60(b) motion to set
aside a default judgment against them. Specifically, the Dressels
contend that the district court erred in determining that a
summons and complaint had been properly served upon them.
In the alternative, pursuant to rule 60(b)(1), the Dressels contend
that the district court abused its discretion by denying their
motion to set aside the default judgment due to mistake,
inadvertence, surprise, or excusable neglect. Because we
determine that service was defective, we reverse the denial of the
Dressels' motion, vacate the judgment entered against the
Dressels, and remand the case to the district court for further

proceedings as appropriate. Given our resolution, we need not and do not address the rule 60(b)(1) aspects of this case.

¶2 "[W]hether a person has been served with process is a question of fact, [but] whether a person is *properly* served is a question of law." *Reed v. Reed*, 806 P.2d 1182, 1184 n.3 (Utah 1991) (emphasis added) (citation omitted). Thus, while we review the district court's factual findings as to service for clear error, we review its legal conclusions flowing therefrom for correctness. *See id.* at 1184–85; *Bonneville Billing v. Whatley*, 949 P.2d 768, 771 (Utah Ct. App. 1997).

¶3 The district court lacks personal jurisdiction when there has not been effective service of process, such as by personal service, service by mail, or service by publication. *See Saysavanh v. Saysavanh*, 2006 UT App 385, ¶ 8, 145 P.3d 1166. And judgments entered by a district court lacking personal jurisdiction over the defendant are void. *Judson v. Wheeler RV Las Vegas, LLC*, 2012 UT 6, ¶ 15, 270 P.3d 456. Consequently, a judgment entered against party that was never properly served is void. One method of properly serving a party is by personal service; personal service of process may be accomplished "by delivering a copy of the summons and the complaint to the individual personally, or by leaving a copy at the individual's dwelling house or usual place of abode with some person of suitable age and discretion there residing." Utah R. Civ. P. 4(d)(1)(A) (2015).[1]

¶4 In November 2013, Nate Dressel, purporting to act for himself and for Jen McKellar (later Dressel), signed a twelve

---

1. Rule 4 of the Utah Rules of Civil Procedure was amended after this case was briefed and argued. The changes are not material to our analysis, and we quote and cite the pre-amendment version of the rule.

month lease with Val Cooper and Richard Cooper for a furnished house in Utah County. The lease included an early termination fee equivalent to three months' rent ($4,050). With four months remaining on the lease, the Dressels sent a letter to the Coopers that stated, "This is a written notice to inform you that as of August 1st, 2014, we are no longer your tenants . . . . We have vacated the property on the grounds of constructive eviction."[2] In the letter, the Dressels requested that their deposit be returned to them via a check or money order sent to an address in Sequim, Washington (the Sequim Address).

¶5    On August 22, 2014, the Coopers sued the Dressels, seeking over $11,000.[3] In order to serve their complaint upon the Dressels, the Coopers subpoenaed the local United States Postmaster, who then revealed that the Dressels' mail was being forwarded to the Sequim Address. The Coopers also consulted an online database, which likewise pointed them to the Sequim

---

2. According to the letter, the Dressels believed they had been constructively evicted because the Coopers had allegedly "repeatedly breached our rights to privacy and quiet and peaceable enjoyment of our rental property." Such disturbances may have been related to the Coopers' preparation for the sale of the property, subject to the lease. On August 8, 2014, the Coopers signed a warranty deed transferring the property to certain buyers. The Dressels and those buyers entered into a "Lease Termination Agreement" on August 12, 2014, which noted that the property sale included the transfer of the lease. In that document, the Dressels and the buyers agreed to terminate the lease "immediately upon the close of the sale transaction" between the Coopers and the buyers.

3. The Coopers' complaint demanded the early termination fee of $4,050, liquidated damages of $1,650, property damages in excess of $4,000, and attorney fees of at least $1,500.

Address. Accordingly, although they had no evidence that the Dressels' "usual place of abode" was at the Sequim Address, the Coopers hired a process server to effect personal service on them at that address. The process server filed an affidavit stating that she had served the complaint and summons upon the Dressels on September 26, 2014, by "personally delivering ONE true and correct copy [of the documents] and leaving the same with MRS. McKELLAR, MOTHER OF JEN DRESSEL." However, Mrs. McKellar later filed an affidavit stating, "When the process server approached me, I told the process server that neither Nate Dressel nor Jen Dressel resided at the address. . . . I refused to accept any papers from the process server." Because neither Dressel answered or otherwise appeared in the action, the district court issued a default judgment against the Dressels on November 13, 2014, in the amount of $13,005.70. On December 5, 2014, the Coopers' attorney mailed a notice of entry of judgment to the Dressels at the Sequim Address.

¶6     The notice of entry of judgment was forwarded, possibly by Mrs. McKellar, to the Dressels, who received it on December 16, 2014. On December 23, 2014, the Dressels filed a motion to set aside the default judgment. They asserted three bases in support of that motion: that the default judgment was void for insufficiency of service, that the default judgment should be set aside under rule 60(b), and that the complaint should be dismissed pursuant to rule 12(b)(6). *See generally* Utah R. Civ. P. 12(b)(5) (insufficiency of service); *id.* R. 60(b) (relief from judgment due to mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, etc.); *id.* R. 12(b)(6) (failure to state a claim upon which relief can be granted).

¶7     The district court held a hearing, at the conclusion of which it orally ruled that service had been proper:

> [The Dressels] lived in a mobile home with no
> address. They provided an address [and] expected

> to . . . have their deposit sent to that address. It was [the Sequim Address]. That was the same address provided by the U.S. Postal Services as [the Dressels'] forwarding address. And, finally, the notice of judgment was sent to that address as well. And that is the time period or at least the claim in which [the Dressels] are saying they became aware of the judgment. All roads point to the fact that [the Sequim Address] is their usual place of abode and that was where they expected to receive notifications regarding any mail that was received. . . . So I'm finding that there was effective service of process in this matter . . . .

The court also denied the rule 60(b) aspects of the motion. The court later issued a written order confirming the oral rulings; that written order was supported by four "findings." The entirety of the court's written findings as to service consisted of a single sentence, which actually set forth a legal conclusion: "The Court finds [the Dressels] were lawfully and validly served at [the Sequim Address]."

¶8     On appeal, the Dressels contend the district court erred in determining that the service was valid. While the district court's written order does not explicitly refer to personal service, the hearing transcript shows that the service determination was based on the court's conclusion that the Sequim Address was the Dressels' "usual place of abode." Indeed, the Coopers had not argued that, and the district court did not discuss whether, service by mail or service by other means had been accomplished. *Compare* Utah R. Civ. P. 4(d)(1)(A) (2015) (providing that personal service may be accomplished when the plaintiff causes, inter alia, a copy of the summons and complaint to be left "at the [defendant's] dwelling house or usual place of abode with some person of suitable age and discretion"), *with id.* R. 4(d)(2) (detailing the requirements for accomplishing service by mail),

*and id.* R. 4(d)(4) (detailing the requirements for accomplishing service by publication or other means).

¶9　In *Reed v. Reed*, the Utah Supreme Court addressed a situation similar to the one at bar. 806 P.2d 1182 (Utah 1991). There, roughly a year after divorcing the defendant, the plaintiff sought to recover from him personal property that had been awarded to her. *Id.* at 1183. She "caused the sheriff to serve the subject summons upon [the defendant] and his parents at his parents' home . . . where [the defendant] had resided during the pendency of the divorce." *Id.* The parents informed the sheriff that the defendant no longer lived there; "[t]he sheriff nevertheless left [the defendant's] copy of the summons at the parents' home and completed a return of service." *Id.* That same month, the defendant moved to quash service. *Id.*

¶10　The correctness question before the *Reed* court was whether the district court had properly determined that the defendant actually lived at his parents' home such that service had been properly accomplished by leaving a copy of the summons at that home. *See id.* at 1184; *see also id.* at 1184–85 ("The district court's determination of whether, under the facts presented, [a defendant's] parents' home fits within the definition of the usual place of abode is a question of law. When reviewing the district court's conclusions of law, we give no deference to the court but review those conclusions for correctness."). The *Reed* court noted that it had previously held that "'where a person abides—lives—at the particular time when the summons is served, constitutes his usual place of abode.'" *Id.* at 1185 (quoting *Grant v. Lawrence*, 108 P. 931, 933 (Utah 1910)). The *Reed* court clarified that "[n]o hard and fast rule can be fashioned to determine what is or is not a party's dwelling house or usual place of abode" within the meaning of rule 4. *Id.* (citation and internal quotation marks omitted). Accordingly, the court considered "the totality of the circumstances," including (1) that the plaintiff had demonstrated the defendant's presence

in the community around the time of the service, (2) that the defendant had listed his home address as his parents' house on his tax returns for the previous two years, (3) that the defendant had resided there during the pendency of the recent divorce, and (4) that the defendant had not shown that he lived elsewhere. *Id.* Given these facts, the *Reed* court held that "the district court was justified in concluding that [the defendant's] parents' home was his usual place of abode." *Id.*

¶11 The Coopers agree that *Reed* is relevant to the analysis here. They argue that the factors *Reed* discussed weigh in their favor. For example, in the Coopers' view, the Dressels' listing of the Sequim Address as their forwarding address is analogous to the *Reed* defendant's listing of his parents' house as his home address for tax purposes. However, a home address suggests residence while a forwarding address does not; it follows that a forwarding address is less determinative of a party's "usual place of abode" than a home address. *See, e.g.*, *State Office of Child Support Enforcement v. Mitchell*, 954 S.W.2d 907, 908–10 (Ark. 1997) (noting that the defendant received mail at his father's address and listed that address on accident reports and insurance forms but declining to "broaden the meaning of the phrase, 'dwelling house or usual place of abode' to include that location which could be reasonably calculated to provide notice to [a defendant] of a pending action against him"; accordingly, service of process was insufficient); *Veillon v. Veillon*, 517 So.2d 936, 939–40 (La. Ct. App. 1987) (holding that service at a mailing address was improper under a domiciliary service statute because the mailing address was not the defendant's domicile); *Fruchtman v. State Farm Mutual Auto. Ins. Co.*, 142 N.W.2d 299, 301 (Minn. 1966) (noting that adult children's use of a parent's house to store personal effects and receive mail is not, by itself, determinative as to whether the children reside there).

¶12 The Coopers also connect the *Reed* defendant's failure to show that he lived elsewhere with the Dressels' failure to

provide the address of their actual residence. Again, the critical distinction between the cases is the relevance to determining the recipient's "usual place of abode." In *Reed*, the supreme court explained that "[t]he sheriff's return of service of process is presumptively correct and is prima facie evidence of the facts stated therein." 806 P.2d at 1185. Thus, the defendant bore the burden of showing that those facts were incorrect—a burden the supreme court noted he failed to carry. *Id.* Here, the process server[4] did not state in her affidavit that the Dressels actually lived at the Sequim Address. It follows that the Dressels did not bear the burden of disproving residence. But even if they had, they did. The Dressels presented affidavits from Jen Dressel, Nate Dressel, and Mrs. McKellar stating that Jen Dressel had not lived at the Sequim Address since 2012 and that Nate Dressel had never lived there, while the process server's affidavit made no mention of whether the Dressels resided there. Thus, the evidence before the district court was that the Dressels were not actually residing at the Sequim Address. Consequently, while the *Reed* defendant was expressly found by the district court to have been residing at his parents' house and failed to show otherwise on appeal, the evidence here showed that the Dressels were not actually residing at the Sequim Address, and the court did not find that they were. This distinction is at the heart of the "usual place of abode" analysis.

¶13    The Coopers further assert a similarity between the *Reed* defendant's actual receipt of the summons and the Dressels' receipt of the notice of entry of default judgment. However, these are dissimilar. Because the *Reed* defendant actually received the summons (and in fact moved to quash service roughly two weeks after the summons was served), he had

---

4. A process server's return of service is entitled to the same presumption of correctness as a sheriff's. *Cooke v. Cooke*, 2001 UT App 110, ¶ 9, 22 P.3d 1249.

notice of the lawsuit at a time when he could respond to it on the merits. The district court's reluctance to quash service was at least partly informed by the fact that the defendant received timely notice of the lawsuit against him. In contrast, according to their affidavits, which were unassailed by competing evidence, the Dressels did not receive actual notice that a lawsuit had been filed against them until after the entry of a default judgment. In short, the service in *Reed* resulted in actual and timely notice while the purported service here did not.

¶14    The arguments posited by the Coopers gloss over an important distinction between the district court's single "finding" as to service here and the findings made in *Reed*. In *Reed*, the supreme court noted that the district court was justified in concluding that the parents' home was the defendant's usual place of abode because "it was, in fact, the place where he lived." *Id.* at 1185. In other words, the "usual place of abode" determination in *Reed* relied on the defendant's failure to present any evidence to disprove the finding that he actually lived at the address in question when the summons was served. Indeed, many of the factors the *Reed* court considered bore on whether the evidence supported the district court's finding that the defendant actually lived at his parents' home. *See id.* In contrast, the district court here did not consider whether the Dressels actually lived at the Sequim Address when the process server visited. Instead, the district court appears to have come to the legal conclusion that because the Dressels received mail there and did not have another physical residential address, the Sequim Address was the legal equivalent of a "usual place of abode." But *Reed* makes clear that the term "usual place of abode" is not a term of convenience synonymous with a defendant's only known address; rather, the determination of whether a defendant's only known address is also his or her usual place of abode for personal service purposes takes into account whether the defendant actually lived there at the time of the purported service. *Id.* Indeed, the Utah Rules of Civil

Procedure provide alternative methods for accomplishing service of process when a defendant has a known address for some limited purpose but not a known usual place of abode (or even when a defendant has no known address).[5]

¶15    Our correctness review is hampered by the district court's single-sentence written "finding" as to the service that was effectuated here. But even considering the record facts in the light most favorable to the district court's ruling, we cannot agree that the Sequim Address was the Dressels' usual place of abode. The Coopers presented no evidence demonstrating the contemporaneous presence of either Dressel in the community of Sequim. There was no evidence that either Dressel listed the Sequim Address as a home address; rather, the evidence simply showed that they listed it as a forwarding address for their mail

---

5. Personal service is not the only manner in which service of process may be accomplished. The Utah Rules of Civil Procedure also provide for service by mail. *See* Utah R. Civ. P. 4(d)(2)(A) (2015). And in cases where "the identity or whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence, . . . or where there exists good cause to believe that the person to be served is avoiding service of process," as the district court implied might be the case here, "the party seeking service of process may file a motion supported by affidavit requesting an order allowing service by publication or by some other means . . . reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action." *Id.* R. 4(d)(4)(A), (B). While serving the summons and complaint upon Mrs. McKellar at the Dressels' mailing address might have been sufficient to accomplish service under this rule, the Coopers never sought leave of court to do so. And the district court considered only whether *personal* service had been accomplished via substitute service at the Dressels' putative "usual place of abode."

while they resided elsewhere. And there was no evidence that either Dressel had recently resided at the Sequim Address. Thus, unlike in *Reed*, there was no evidence presented to the court that the party to be served actually lived at the delivery address at the time the summons and complaint were purportedly served there. Considering the totality of the circumstances, we must conclude that the Sequim Address was not the Dressels' "usual place of abode." *Cf. Earle v. McVeigh*, 91 U.S. 503, 503 (1875) (holding that a notice posted upon a house seven months after it had been vacated by the defendant was not posted upon his usual place of abode and that a judgment founded on such defective notice was absolutely void). It follows that personal service of process was not accomplished, because copies of the summons and complaint were not left "at the individual's dwelling house or usual place of abode." *See* Utah R. Civ. P. 4(d)(1)(A) (2015).

¶16　We hold that the district court erred in determining that personal service had been accomplished under the facts of this case. Because service of process was defective, the district court lacked jurisdiction and its judgment was void. *See Bonneville Billing v. Whatley*, 949 P.2d 768, 771 (Utah Ct. App. 1997). We reverse the district court's denial of the Dressels' motion, vacate the default judgment, and remand the case to the district court for further proceedings as appropriate.

―――――――