2017 UT App 36

## THE UTAH COURT OF APPEALS

C504750P LLC,
Appellee,
*v.*
STACI BAKER,
Appellant.

Opinion
No. 20150826-CA
Filed February 24, 2017

Fourth District Court, Provo Department
The Honorable James R. Taylor
No. 140401249

Gregory N. Hoole, Attorney for Appellant

Wm. Kelly Nash and Kimberly N. Baum, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.

ORME, Judge:

¶1 Appellant Staci Baker challenges the district court's denial of her motion for relief from a default judgment. We affirm.

¶2 Baker purchased a forty percent interest in a parcel of land (the Property) for $5,070 at a tax sale in 2013. The other sixty percent interest in the Property remained with its original owner. Approximately one year after Baker purchased her interest in the Property, the original owner entered a real estate purchase contract (the REPC) to sell the Property to C504750P LLC (C5). Under the REPC, C5 was to buy all of the Property, including Baker's interest, for $15,000. *See* Utah Code Ann. § 59-2-1351.7 (LexisNexis 2015) (stating that the sale of property previously subject to a tax sale cannot be prevented by the tax

sale purchaser if that purchaser owns less than forty-nine percent and will receive the greater of its purchase price plus twelve percent interest or its pro rata share of the sales price).

¶3    Shortly thereafter, Baker received a letter notifying her of her right to a pro rata share of the purchase price of the Property and inviting her to attend a closing for the Property where she would sign a quitclaim deed for her interest in exchange for forty percent of the $15,000 purchase price—approximately an eighteen percent return on her investment. Baker's husband replied to the letter on her behalf, stating that Baker would not cooperate with the sale. In light of Baker's refusal to participate, C5 placed the $15,000 in escrow, obtained a quitclaim deed from the original owner, and sued Baker for specific performance under the REPC.

¶4    After filing its complaint, C5 began its efforts to serve Baker with process. Over an eighteen-day period, C5 repeatedly tried to serve Baker at her last known address, where the previous letter had been sent. On five occasions—on varying days of the week and at different times each day—a process server (Server) attempted personal service at Baker's residence. During these attempts, Server saw people in the house and cars in the driveway, but no one ever answered the door.[1] On one occasion, Server even saw a man working in the home's office and made eye contact with him, but after Server knocked and no one answered, Server saw that the blinds to the office had been closed. Server also spoke with several neighbors, all of whom

---

1. A litigant is not privileged to avoid lawful process. *Cf. D'Aston v. D'Aston*, 790 P.2d 590, 592–93 (Utah Ct. App. 1990) (concluding that an "order of contempt was properly entered" even though appellant's counsel rather than appellant was served with the Order to Show Cause, and despite "the importance of actual notice in contempt proceedings," "[b]ecause appellant ha[d] purposefully hidden to avoid service of process and notice of the contempt proceedings").

told him that Baker resided at the house. On another occasion, Server left his business card so that Baker could contact him, but she did not. Meanwhile, a paralegal who worked for C5's counsel did an electronic address search to verify that Baker's last known address was still this address and mailed a certified letter to Baker with return receipt requested. The letter was returned unclaimed. As a result of these many failed attempts at service, Server recommended that C5 seek permission to use an alternative method to serve Baker.

¶5      Following Server's advice, C5 requested approval from the district court to serve Baker through publication. *See* Utah R. Civ. P. 4(d)(5)(A). In support of its request, C5 submitted a declaration of nonservice from Server and a declaration from the paralegal regarding the certified letter. With regard to the request, the district court made the following findings of fact:

1.   [Baker] has avoided personal service and there are no other means to personally serve [Baker].

2.   The whereabouts of [Baker] are either unknown and cannot be ascertained through reasonable diligence, or there exists good cause to believe that [Baker is] avoiding service of process, and service by normal means is unreasonable and impracticable under the circumstances.

The district court authorized C5's request, requiring publication on two occasions on consecutive weeks "in a newspaper of general circulation in Utah County, Utah." In accordance with the district court's order, C5 published its notice in *The Daily Herald*. Baker did not file an answer, and the district court entered default judgment against her. The judgment quieted title to the Property, obligated C5 to pay Baker her share of the proceeds, and awarded C5 its costs and fees—totaling $5,126.20—to be deducted from Baker's share of the proceeds.

¶6 Notice of the judgment was then mailed to Baker's last known address. Shortly thereafter, the mailed notice having apparently reached her, Baker moved the court to set aside the judgment. Citing rule 60(b) of the Utah Rules of Civil Procedure, Baker claimed that the order allowing service through publication was void because C5 "failed to use reasonable efforts to serve" her. The district court denied that motion. Baker appeals, arguing that she was entitled to relief because she was not afforded due process, as she was not properly served prior to entry of the judgment; because the fee award in the judgment was not proper in that she was not a party to the contract containing the attorney fee provision; and because she has a meritorious defense to the underlying claims that entitles her to have the default judgment set aside.

¶7 "A district court has broad discretion to rule on a motion to set aside a default judgment under rule 60(b) of the Utah Rules of Civil Procedure," so we generally review such a denial for an abuse of discretion. *Menzies v. Galetka*, 2006 UT 81, ¶ 54, 150 P.3d 480. But when considering whether a judgment is void, as Baker's argument suggests, we apply a heightened standard of review, affording "the district court . . . no discretion . . . because the determination that a judgment is void implicates the court's jurisdiction." *Migliore v. Livingston Fin., LLC*, 2015 UT 9, ¶ 25, 347 P.3d 394. We review the court's underlying findings for clear error and its conclusions of law for correctness. *Menzies*, 2006 UT 81, ¶ 55.

¶8 Baker claims that she was entitled to relief from the default judgment because C5's use of service by publication meant that the judgment was entered without notice, which due process requires, thereby depriving the district court of personal jurisdiction over Baker.[2] She asserts that the district court's order

---

2. "[T]he burden of demonstrating a lack of jurisdiction lies on the party challenging jurisdiction." *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 9, 100 P.3d 1211.

permitting service by publication was erroneous because the United States Supreme Court "assailed service by publication as a constitutionally impermissible means of service." She then incorrectly contends that publication could never have been a proper means of service here because there were other means, such as service by mail, that were not utilized.[3] *See infra* ¶ 9. In making this argument she uses the language of rule 60(b)(4), claiming that she is entitled to relief because "the judgment is void." *See* Utah R. Civ. P. 60(b)(4). She also cites the catchall provision in rule 60(b)(6), which permits relief from a judgment for "any other reason that justifies relief." *Id.* R. 60(b)(6).

¶9     We first consider Baker's argument that the judgment is void. If a "judgment [is] entered without the notice required by due process," it is void and rule 60(b)(4) provides a basis for relief. *Judson v. Wheeler RV Las Vegas, LLC*, 2012 UT 6, ¶ 18, 270 P.3d 456. "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). This is most commonly accomplished either by a process server, who renders personal service, or by mail to a known address. But "where there exists good cause to believe that the person to be served is avoiding service of process" and the litigants have demonstrated their reasonable efforts to locate the party to be served, alternative service, such as by publication, may be appropriate. Utah R. Civ. P. 4(d)(5). The rules of civil procedure afford "the court . . . discretion to order the *type* of process, so long as the process it chooses meets the constitutional requirement." *Bonneville Billing v. Whatley*, 949 P.2d 768, 772 (Utah Ct. App. 1997) (emphasis in original).

---

3. In making this last point, Baker ignores C5's unsuccessful effort to reach her at her residence via certified mail.

¶10 Alternative service is constitutionally sufficient if the district court finds that the "litigants . . . first [undertook] *reasonably diligent* efforts to locate the party to be served." *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 11, 100 P.3d 1211 (emphasis added). Plaintiffs exercise reasonable diligence if they "take advantage of readily available sources of relevant information" to locate defendants. *Id.* ¶ 20. In a case where a plaintiff identified two possible addresses for the defendant and demonstrated its persistent efforts to serve the defendant by certified mail and by personal service at each address, we concluded it had exercised reasonable diligence. *See Smith Springs, LLC v. Fullingim*, 2006 UT App 488U, para. 6. *See also Ooida Risk Retention Group, Inc. v. Bhangal*, No. 2:14-CV-168, 2016 WL 2596026, at *2 (D. Utah May 5, 2016) (concluding that a plaintiff exercised reasonable diligence when it hired private investigators, attempted to serve the defendant, and surveilled the defendant).

¶11 It is inadequate, however, for litigants to focus on only one or two sources without also pursuing other leads as to the whereabouts of the party to be served. *See Jackson Constr. Co.*, 2004 UT 89, ¶ 20. Thus, a plaintiff who undertook only to mail process, which was subsequently returned "undeliverable," to an address obtained from the county recorder without verifying that address through resources such as the phonebook, did not demonstrate reasonable diligence. *Id.* ¶ 21. *See also Bonneville Billing*, 949 P.2d at 769–70, 775 (concluding that the plaintiff had not exercised due diligence when it only served the defendant at a business address in Salt Lake City even though the constable, who was charged with serving the defendant, was unsuccessful in serving the defendant there and noted that he had received information that the defendant was working in California).

¶12 C5 was reasonably diligent in its efforts to serve Baker. As in *Smith Springs*, C5 made persistent efforts to contact and serve Baker by utilizing various methods. *See* 2006 UT App 488U, para. 6. On five occasions, Server went to what he believed to be Baker's address based on her husband's previous response on

her behalf to the letter sent to her there. During these trips, Server sought information regarding her whereabouts from neighbors, observed the goings-on within the house for signs that someone who could receive process was present, and left a card to inform her of how to reach him. C5 also sought to corroborate its belief that Baker's last known address continued to be her address by conducting an online search and then sending certified mail to her at that address. It was only after all these steps were taken that Server conveyed his professional recommendation that C5 seek court approval to use an alternative method of service.

¶13   C5's efforts were more extensive than the inadequate efforts in *Jackson Construction Co.* of mailing process to one address, the reliability of which was not in any way corroborated. *See* 2004 UT 89, ¶ 21. Here the address was corroborated by Baker's husband's letter prior to litigation, the neighbors' statements to Server, and the online search. And while Baker insists that service by mail should have been tried before service by publication could be proper, she does not explain why service by regular mail would be effective when even a certified letter was returned unclaimed. In other words, she has suggested no other reasonably diligent conduct that C5 could have undertaken. *See id.* ¶ 9 ("[T]he burden of demonstrating a lack of jurisdiction lies on the party challenging jurisdiction."). Thus, the district court's order permitting service by publication was not erroneous under the circumstances and does not void the default judgment.

¶14   Second, Baker contends that "[i]f there were ever a reason justifying relief from a judgment under rule 60(b)(6), it would be to ensure a person's constitutional guarantee to due process was afforded to them." While we do not disagree that one of the purposes of rule 60 is to protect the due process rights of litigants, *see Menzies v. Galetka*, 2006 UT 81, ¶ 63, 150 P.3d 480 ("Rule 60(b) is an equitable rule designed to balance the competing interests of finality and fairness."), Baker has not satisfied the test for rule 60(b)(6), which requires "[f]irst, that the

reason be one other than those listed in subdivisions (1) through ([5]); second, that the reason justify relief; and third, that the motion be made within a reasonable time," *Laub v. South Central Utah Tel. Ass'n*, 657 P.2d 1304, 1306–07 (Utah 1982) (emphasis omitted). She has not demonstrated that her 60(b)(6) claim is distinct from her argument that the judgment was void for lack of due process, which falls under rule 60(b)(4). Thus, she fails to satisfy the test's first requirement, and, as a result, rule 60(b)(6) does not provide her a basis for relief.

¶15  Baker next contends that the attorney fee award in the default judgment is also grounds for relief from the judgment. She claims that "[i]t is axiomatic that a person is not bound by the terms of an agreement to which she is not a party." And while this may be true, she has provided no citations to authority supporting her assumption. In fact, the only citations she provided set out the general rule that Utah permits attorney fees to the prevailing party only if authorized by statute or contract. Her reply brief provides no further guidance. She asserts that C5 "led the trial court into committing plain error"— again without any citations to law or analysis of facts demonstrating why this was plain error. Without any such guidance, we decline to consider this issue further. *See* Utah R. App. P. 24(a)(9) (requiring an appellant's brief to include "citations to the authorities, statutes, and parts of the record relied on"); *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) (determining that an issue was inadequately briefed where the appellant provided only bare citations without any "[a]nalysis of what [the cited] authority requires [or] how the facts of [the] case satisfy these requirements").[4]

---

4. In her reply brief, Baker also asserts that she is entitled to her fees on appeal because C5's brief was "frivolous" as it "contain[ed] multiple misstatements of material fact." She then proceeds to identify six ways in which "[a]ppellee's brief is not grounded in fact" or is otherwise inaccurate, stating that C5's

(continued…)

¶16    Finally, Baker suggests that she is entitled to relief because she has a meritorious defense to C5's claims against her. But the existence of a meritorious defense is not, by itself, a justification for relief under rule 60(b). *See Judson v. Wheeler RV Las Vegas, LLC*, 2012 UT 6, ¶ 14, 270 P.3d 456. Rather, it is merely one part of the test for relief under rule 60(b): "'justice' is generally furthered by granting such a motion upon (1) a showing that there is an explicit basis for granting relief under one of the subsections of 60(b); *and* (2) an allegation of a meritorious defense." *Id.* (emphasis added). Thus, we will only "consider the issue of meritorious defense [if we are] satisfied that a sufficient excuse [under rule 60(b)] has been shown." *Aspenbrook Homeowners Ass'n v. Dahl*, 2014 UT App 99, ¶ 10, 329 P.3d 822 (second alteration in original) (citation and internal quotation marks omitted). Because Baker has made no such showing, we decline to consider whether she has a meritorious defense.

¶17    Affirmed.

_____

(…continued)
brief either misrepresents her arguments, misrepresents the facts in a manner that is "false and refuted by the record," or misstates relevant legal authority. But she has not pointed us to where in the record the relevant countervailing facts can be found or provided citations to supporting law. Thus, her claim is inadequately briefed, *see supra* ¶ 15, and we decline to further consider this contention.