2017 UT App 125

**David SILVA, Appellee,**

v.

**Bonnie SILVA, Appellant.**

No. 20160171-CA

Court of Appeals of Utah.

Filed July 28, 2017

J. Spencer Ball, Salt Lake City, Attorney for Appellant.

Shawn D. Turner, Attorney for Appellee.

Judge J. Frederic Voros Jr. authored this Opinion, in which Judges Gregory K. Orme and Michele M. Christiansen concurred.

## Opinion

VOROS, Judge:

¶ 1 Bonnie Silva appeals the district court's denial of her motions to set aside a default judgment and a sheriff's sale following that judgment. She also challenges the district court's award of attorney fees. We vacate the default judgment and remand for further proceedings.

## BACKGROUND

¶ 2 Bonnie Silva and David Silva divorced in 2010. The marital estate included interests in fifteen parcels of real property—four properties held jointly, one property held by David, and ten properties held by Bonnie.[1] The decree allocated the properties and ordered the parties to execute quitclaim deeds within 30 days conveying the properties to one another as specified in the decree. If either party failed to execute a quitclaim deed, the divorce decree authorized the other party to seek a court order transferring title to him or her. One of the properties awarded to David was a residential property located on Dennis Drive in West Valley City (the Dennis Drive Property).

¶ 3 In June 2010, pursuant to the divorce decree, Bonnie executed a quitclaim deed as "Grantor Bonnie Moore, now known as Bonnie Silva," purportedly conveying the Dennis Drive Property to David. But when David attempted to record the deed, he discovered that "Bonnie Moore as Trustee for the Consolidated Trust" held title to the Dennis Drive Property. He further discovered that one week before he had filed for divorce in September 2008, Bonnie conveyed the Dennis Drive Property and other properties in her name to herself and her daughters, K.V. Lum and R. Carter, as trustees of a trust

---

1. In keeping with our practice in cases where parties "share a last name, we refer to them by their first names for clarity, with no disrespect intended by the apparent informality." *Earhart v. Earhart*, 2015 UT App 308, ¶ 2 n.1, 365 P.3d 719.

known as the Consolidated Trust. After learning these facts, David sent a revised quitclaim deed to Bonnie, but she did not sign and return it as requested. Several months later, Bonnie, as trustee of the Consolidated Trust, conveyed the Dennis Drive Property and her other properties to Lum as trustee of the Consolidated Trust.

¶ 4 The divorce court held an evidentiary hearing and found Bonnie in contempt for failing to convey the Dennis Drive Property to David. The court ruled that if Bonnie did not convey the Dennis Drive Property to David within 30 days, the court would enter judgment against her in the amount of $219,000. Neither Bonnie nor Lum conveyed the Dennis Drive Property to David. A few months later, Lum, as trustee of the Consolidated Trust, conveyed title to the Dennis Drive Property to Carter as trustee. The divorce court entered judgment against Bonnie for $217,690.62.

¶ 5 The following month David sued Bonnie and her daughters in district court for fraudulent conveyance and quiet title. David filed a motion for alternative service recounting his unsuccessful efforts to serve Bonnie with the complaint. David asserted that the process server had attempted personal service at Bonnie's last known address four separate times. The district court ordered alternative service by publication, which David accomplished.

¶ 6 Bonnie did not answer the complaint. The district court consequently entered a default certificate against Bonnie and ordered an evidentiary hearing on damages. Concerned that Bonnie may not have received adequate notice of the hearing, the district court rescheduled the hearing and required additional service on Bonnie. David attempted service by mailing copies of the notice of hearing to Bonnie's last known address by both regular mail and certified mail. David also attempted personal service whereby the process server left the notice of hearing at her last known residence on three separate occasions. David then completed service by publication again.

¶ 7 Bonnie did not appear at the hearing on damages. In its Findings of Fact and Conclusions of Law, the district court found that "Service of Process of the Complaint and notice of the evidentiary hearing on damages were in accordance with the Rules of the Court, the Statutes of Utah and the Constitutional requirements of due process." The district court also found that Bonnie had fraudulently conveyed the Dennis Drive Property and her other properties to the Consolidated Trust. Accordingly, the district court ruled that the $217,690.62 judgment entered in the divorce court attached to the properties, that defendants were enjoined from transferring or encumbering the properties, and that David "may levy execution on the properties . . . and sell the amount of the property necessary to satisfy the judgment." Finally, the district court awarded attorney fees and costs to David against Bonnie. The district court thus entered default judgment against Bonnie in the amount of $217,690.62 plus interest, $48,315.62 in attorney fees, and $964.34 in costs. The district court also issued a writ of execution on three of Bonnie's properties, including the Dennis Drive Property.

¶ 8 Later that same month, Bonnie's counsel entered an appearance in the district court and filed a motion pursuant to rule 60(b) of the Utah Rules of Civil Procedure seeking to set aside the default judgment and to quash the writ of execution. The district court held a hearing, which Bonnie and her counsel attended. At the hearing Bonnie maintained that the default judgment should be set aside on the ground of insufficient service. Bonnie acknowledged that service complied with the letter of the law, but argued that David knew where Bonnie was located and could easily have contacted her. Bonnie filed an affidavit with her rule 60(b) motion and a second affidavit with her reply motion. In the first affidavit, she alleged that she had not received notice of the current action against her. She further alleged that she received a call from David notifying her that "something was wrong with the quitclaim deed" but that "David never indicated to [her] in that telephone call that there was any court proceeding[.]" In her second affidavit, she alleged that David knew of various means of contacting her, including her two email addresses or through his son or her

children and the renters of their properties. David did not contest these allegations.

¶ 9 The district court denied Bonnie's motions. The court denied the motion to set aside on the ground that "service and the resulting default were appropriate," given Bonnie's failure to provide evidence supporting her assertions. Similarly, the court denied the motion to quash for failure to provide evidence of irreparable harm.

¶ 10 Four days later, the Dennis Drive Property and the other two properties subject to the writ of execution were sold at a sheriff's sale. Bonnie responded with a motion for a temporary restraining order (TRO), a motion to void the execution sale, and a motion to join the sale purchasers as parties to the action. After a hearing, the district court denied the TRO on the ground that Bonnie had failed to meet the required elements for relief. The court denied the motion to join the purchasers on the ground that "[Bonnie] cites rules that apply before a judgment is made and are not applicable for a case as this one where judgment was entered." The court noted that, "even if there was no judgment in this case, there is no basis, claim, or cause of action asserted against the purchasers." The court denied the motion to void the execution sale on the ground that the court had already ruled at the TRO hearing that the notice of sale was properly served.

¶ 11 Bonnie appeals the district court's denial of her motions to set aside the default judgment and the sheriff's sale and the district court's award of attorney fees to David.

## ISSUES AND STANDARDS OF REVIEW

■■■ ¶ 12 Bonnie asserts three claims of error on appeal. First, she contends that the district court abused its discretion in denying her motion to set aside the default judgment, arguing that she has shown excusable neglect and a due process violation because service of process failed to give her actual notice. We generally review a district court's denial of a rule 60(b) motion under an abuse of discretion standard. *Utah Res. Int'l, Inc. v. Mark Techs. Corp.*, 2014 UT 60, ¶ 11, 342 P.3d 779. "Whether a person has been served with

process is a question of fact, but whether a person is *properly* served is a question of law." *Cooper v. Dressel*, 2016 UT App 246, ¶ 2, 391 P.3d 338 (brackets, citation, and internal quotation marks omitted). "Thus, while we review the district court's factual findings as to service for clear error, we review its legal conclusions flowing therefrom for correctness." *Id.*

■■■ ¶ 13 Second, Bonnie contends that the district court abused its discretion in denying her motion to set aside the sheriff's sale, claiming she lacked notice and pointing to irregularities in the sale. " '[A] district court's decision to set aside a sheriff's sale is to be reviewed for an abuse of . . . discretion.' " *Meguerditchian v. Smith*, 2012 UT App 176, ¶ 9, 284 P.3d 658 (omission in original) (quoting *Pyper v. Bond*, 2011 UT 45, ¶ 24, 258 P.3d 575).

■■■ ¶ 14 Third, Bonnie contends that the district court abused its discretion in awarding attorney fees to David, arguing that the fee award lacked factual findings and was unreasonably large. A trial court's conclusion as to what constitutes a reasonable attorney fee award is reviewed for an abuse of discretion. *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 90, 372 P.3d 629 (citation and internal quotation marks omitted).

## ANALYSIS

### I. Rule 60(b) Motion

¶ 15 Bonnie contends that the district court abused its discretion in denying her rule 60(b) motion to set aside the default judgment. She argues that "[t]he requirements of Rule 60(b) were fully fulfilled . . . to have the default judgment set aside, far beyond any discretion of the trial judge to deny it." The district court denied Bonnie's rule 60(b) motion on the ground that she failed to show excusable neglect and a meritorious defense.

■■■ ¶ 16 Rule 60(b) of the Utah Rules of Civil Procedure provides a mechanism for a party to obtain relief from a final order or judgment. *Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 13, 376 P.3d 322. "[A] movant is entitled to have a default judgment set aside under 60(b) if (1) the motion is

timely; (2) there is a basis for granting relief under one of the subsections of 60(b); and (3) the movant has alleged a meritorious defense." *Menzies v. Galetka*, 2006 UT 81, ¶ 64, 150 P.3d 480.[2]

¶ 17 "The assertion of a separate meritorious defense is generally, but not always, required in a successful 60(b) motion." *Judson v. Wheeler RV Las Vegas, LLC*, 2012 UT 6, ¶ 15, 270 P.3d 456. "If a judgment is entered by a court that lacks jurisdiction, justice is furthered by setting that judgment aside as void under rule 60(b)(4) even absent a separate meritorious defense." *Id.* "The district court lacks personal jurisdiction when there has not been effective service of process, such as by personal service, service by mail, or service by publication." *Cooper v. Dressel*, 2016 UT App 246, ¶ 3, 391 P.3d 338. "And judgments entered by a district court lacking personal jurisdiction over the defendant are void." *Id.* "Consequently, a judgment entered against [a] party that was never properly served is void." *Id.*

¶ 18 Bonnie contends that she is entitled to relief under rule 60(b)(4) and due process principles. Rule 60(b)(4) permits the court to relieve a party from a judgment where "the judgment is void." *See* Utah R. Civ. P. 60(b)(4). A judgment is void if it was " 'entered without the notice required by due process.' " *C504750P LLC v. Baker*, 2017 UT App 36, ¶ 9, 397 P.3d 599 (quoting *Judson*, 2012 UT 6, ¶ 18, 270 P.3d 456). The Due Process Clause of the United States Constitution requires that a plaintiff "act diligently and take such steps in attempting to give the defendant actual notice of the proceeding as are reasonably practicable." *Carlson v. Bos*, 740 P.2d 1269, 1275 (Utah 1987); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Thus, "[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (citation and internal

quotation marks omitted); *see also Migliore v. Livingston Fin., LLC*, 2015 UT 9, ¶ 27, 347 P.3d 394; *Baker*, 2017 UT App 36, ¶ 9, 397 P.3d 599. The form of notice chosen satisfies this requirement only if it "is as reasonably calculated to reach the defendant as any other practicable alternative." *Carlson*, 740 P.2d at 1276.

¶ 19 Rule 4 of the Utah Rules of Civil Procedure permits alternative service of process, such as by publication, when the "whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence." *See* Utah R. Civ. P. 4(d)(5)(A). "If reasonable diligence does not yield the address for personal service, a plaintiff may move for alternative service only if the motion is accompanied by an affidavit describing the specific efforts made to locate the other party." *Miles v. Miles*, 2011 UT App 359, ¶ 7, 269 P.3d 958; *see also* Utah R. Civ. P. 4(d)(5)(A). "Alternative service is constitutionally sufficient if the district court finds that the 'litigants . . . first [undertook] *reasonably diligent* efforts to locate the party to be served.' " *Baker*, 2017 UT App 36, ¶ 10, 397 P.3d 599 (alteration and omission in original) (quoting *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 11, 100 P.3d 1211).

¶ 20 "Plaintiffs exercise reasonable diligence if they 'take advantage of readily available sources of relevant information' to locate defendants." *Id.* (quoting *Jackson Constr.*, 2004 UT 89, ¶ 20, 100 P.3d 1211). "It is inadequate . . . for litigants to focus on only one or two sources without also pursuing other leads as to the whereabouts of the party to be served." *Id.* ¶ 11. A plaintiff "cannot satisfy federal due process requirements by using substitute service of process mailed to a last known address without first having shown that diligent efforts have been made to locate the defendant." *Carlson*, 740 P.2d at 1276.

¶ 21 We recently applied the standard for reasonably diligent efforts for service of process. In *Baker*, we determined that the plaintiff "was reasonably diligent in its efforts to serve" the defendant because the plaintiff "made persistent efforts to contact and serve

---

**2.** It is uncontested that Bonnie's rule 60(b) motion was timely.

[the defendant] by utilizing various methods." 2017 UT App 36, ¶ 12, 397 P.3d 599. We noted that the plaintiff "sought to corroborate its belief that [the defendant's] last known address continued to be her address" through several sources including a letter from the defendant's husband sent from that address, neighbors' statements, and an online search. *Id.* ¶¶ 12–13. We also noted that the defendant "suggested no other reasonably diligent conduct that [the plaintiff] could have undertaken." *Id.* ¶ 13. We distinguished *Jackson Construction*, where the plaintiff "undertook only to mail process, which was subsequently returned 'undeliverable,' to an address obtained from the county recorder without verifying that address through resources such as the phonebook." *Id.* ¶ 11 (quoting *Jackson Constr.*, 2004 UT 89, ¶ 21, 100 P.3d 1211). We explained in *Baker* that the plaintiff's efforts "were more extensive than the inadequate efforts in *Jackson Construction Co.* of mailing process to one address, the reliability of which was not in any way corroborated." *Id.* ¶ 13.

¶ 22 Bonnie argues that David could easily have contacted her if he had wanted to; he had, she asserts, "many means at his disposal to contact [her] to give notice that he was suing her, including calling and emailing her." Her affidavit alleges that he knew "her two active email addresses, her telephone number, ... her children, and many other means he had after 13 years of marriage" to contact her. David counters that "service was proper" because alternative service was made in accordance with Rule 4. He also claims that service was attempted "at the last known address of Bonnie ... as reported in the divorce action, at the address determined appropriate for service in the divorce action, and at a subsequent PO Box used by Bonnie." The court noted that "counsel for [Bonnie] admitted at the hearing that service upon [her] was legally proper." The court thus concluded that "service and the resulting default were appropriate."

¶ 23 We conclude that David's efforts fell short of the standards set forth in the authorities cited above. David attempted personal service at Bonnie's last known address four times before filing a motion for alternative service. However, unlike in *Baker*, there is no evidence that David sought to corroborate the reliability of the address at which he attempted to serve her. *See Baker*, 2017 UT App 36, ¶ 12–13, 397 P.3d 599. Nor did he pursue the means suggested by Bonnie to corroborate his belief that this address continued to be her address. *See id.*

¶ 24 As stated above, due process requires a plaintiff to act diligently and take all reasonably practicable steps to give the defendant actual notice. *See Carlson*, 740 P.2d at 1275–76. To be constitutional, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds*, 559 U.S. at 272, 130 S.Ct. 1367 (citation and internal quotation marks omitted). Bonnie alleges—and David does not dispute—that David knew "her two active email addresses, her telephone number," and other avenues of communication. We cannot agree that, given these readily available avenues of communication, David has demonstrated that the form of notice he chose was "as reasonably calculated to reach the defendant as any other practicable alternative." *See Carlson*, 740 P.2d at 1276.

¶ 25 Because Bonnie did not receive the notice required by due process, the district court lacked jurisdiction, and the default judgment is void. *See Cooper v. Dressel*, 2016 UT App 246, ¶ 3, 391 P.3d 338. Bonnie was thus entitled to relief under rule 60(b)(4), even without a meritorious defense. We accordingly reverse the district court's denial of Bonnie's rule 60(b) motion on this ground. Because the judgment—including its award of attorney fees—is void, we need not further address Bonnie's challenge to that attorney fee award.

## II. Sheriff's Sale

¶ 26 Bonnie contends that "[t]he execution sale should be set aside for being made without notice ... and for serious irregularities." These "irregularities" include failure to serve the notice of sale on counsel, noticing the sale prior to the requested hearing, and failure to sell severable lots separately. David responds

that the "notice of sale was not required to be served on [Bonnie's] counsel," and that in any event, Bonnie "knew that the sale was in the offing because [she] received notice of the writ of execution and praecipe" and "[p]ersonal oral notice was given to both [Bonnie] and [her] counsel at the hearing." David also argues that "any defects in the sale were technical and should not result in avoidance of the sale."

[redacted] ¶ 27 Both parties rely on cases explaining the generally applicable standard for setting aside a sheriff's sale in the context of procedural irregularities in noticing and conducting the sale. Such flaws render a sheriff's sale voidable, not void. *See Bangerter v. Petty*, 2010 UT App 49, ¶ 13, 228 P.3d 1250. In such cases, a court "may set aside a sheriff's sale where (1) a debtor's property is sold at a grossly inadequate price and (2) there were irregularities during the sale that contributed to the inadequacy of price or circumstances of unfairness during the redemption period caused by the conduct of the party benefitted by the sale." *Pyper v. Bond*, 2011 UT 45, ¶ 15, 258 P.3d 575. But a sheriff's sale suffers from a more fundamental flaw where, as here, the underlying judgment is void: the sale is also void. *See Bangerter*, 2010 UT App 49, ¶ 12, 228 P.3d 1250 ("'A sale is void ... when an execution is issued on a void judgment.'" (quoting *Lang v. Barrios*, 472 N.W.2d 464, 466 (N.D. 1991))).

¶ 28 Our supreme court has declared that a "void deed carries no title on which a bona fide purchaser may rely." *Bank of America v. Adamson*, 2017 UT 2, ¶ 20, 391 P.3d 196 (citation and internal quotation marks omitted). Other state courts agree that a sale based on a void judgment does not convey title to the purchaser. *See, e.g.*, *Sprang v. Petersen Lumber, Inc.*, 165 Ariz. 257, 798 P.2d 395, 400 (Ariz. Ct. App. 1990) ("When a judgment is void, the execution of the judgment is void, and title to land does not pass."); *Balding v. Fleisher*, 279 So. 2d 883, 884 (Fla. Dist. Ct. App. 1973) ("[A] judicial sale made under a void decree, as where there are fatal jurisdictional defects, confers no title on the purchaser at the sale." (citing 50 C.J.S. *Judicial Sales* § 41; 47 Am. Jur. 2d, *Judicial Sales* § 261)); *Ahlstrom v. Lyon*, 169 Or. 629, 131 P.2d 219, 221 (1942) ("[T]he sale was void and vested no title in the purchaser .... Setting aside the sale merely leaves the parties in statu[s] quo." (citations omitted)); *Maloney v. Simpson*, 226 Pa. 479, 75 A. 675, 676 (1910) ("If the sheriff had failed to comply with the requirements of the statute as to service, there can be no doubt that the judgment entered would be void, and that a sale upon it would not vest a good title in the purchaser.").

¶ 29 This is the general rule even as to bona fide purchasers. *See Bank of America*, 2017 UT 2, ¶ 20, 391 P.3d 196. *See also Sprang*, 798 P.2d at 401 (concluding that because "the judgment against [the owner] was void, the subsequent transfers conveyed nothing, and the doctrine of bona fide purchaser for value does not apply"); *Idlewine v. Madison County Bank & Trust Co.*, 439 N.E.2d 1198, 1203 (Ind. Ct. App. 1982) (concluding that "the foreclosure sale resulted from void judgments which are complete legal nullities from which [the purchasers] cannot derive protection for their purchase"); *Hanson v. Woolston*, 701 N.W.2d 257, 267 (Minn. Ct. App. 2005) (concluding that "the bona-fide-purchaser doctrine should not apply to create a title to land when there is a total absence of title in the vendor"); *American Tax Funding, LLC v. Robertson Sandusky Props.*, 26 N.E.3d 1202, 1216 (Ohio Ct. App. 2014) (concluding that the purchaser's "status as a good faith purchaser for value, which typically would protect its title to the property, does not do so in this case because [the owner] has shown that service was improper").[3]

[redacted] ¶ 30 In the present case, as explained above, because service of process did not satisfy due process requirements, the

3. Of course, under principles of equity, an innocent purchaser who lacks title to the property may well be entitled to return of the purchase price. *See Townsend v. Tipton*, 289 Ky. 766, 160 S.W.2d 161, 164 (Ky. Ct. App. 1942) ("[E]quity demands that [the purchaser] be made whole by being restored as nearly as possible.... This can be done only by rescinding everything that has been done. Obviously, complete rescission cannot be accomplished without returning an innocent purchaser's money." (citations omitted)).

district court lacked personal jurisdiction over Bonnie. Consequently, the judgment entered against her was void. Under *Bank of America*, we conclude that the sheriff's sale and deed based on that judgment were also void and thus could not convey title to any purchaser. *See Bank of America*, 2017 UT 2, ¶ 20, 391 P.3d 196.

¶ 31 Because the parties have not briefed the further implications of a void judgment, and the purchaser is not a party to this appeal, we decline to address any remaining issues relating to the purchaser. Instead, we remand the case to the district court for further proceedings consistent with this opinion.

### III. Attorney Fees on Appeal

■■■ ¶ 32 Bonnie contends that "[e]quity requires that [she] be granted her attorney's fees for having to make this appeal." David counters that even if Bonnie is "able to prevail on appeal, [she] would not be entitled to [her] fees," because she was "not awarded fees below." David also requests attorney fees on appeal.

■■■ ¶ 33 "When a party is entitled to attorney fees below and prevails on appeal, that party is also entitled to fees reasonably incurred on appeal." *Jordan Constr., Inc. v. Federal Nat'l Mort. Ass'n*, 2017 UT 28, ¶ 71, — P.3d — (brackets, citation, and internal quotation marks omitted). "In general, Utah follows the traditional American rule that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." *Hughes v. Cafferty*, 2004 UT 22, ¶ 21, 89 P.3d 148, *abrogated on other grounds as recognized by Rehn v. Christensen*, 2017 UT App 21, 392 P.3d 872. "However, in the absence of a statutory or contractual authorization, a court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interests of justice and equity." *Id.* (brackets, citation, and internal quotation marks omitted). "Courts have exercised that inherent power in several categories of cases," such as "when a party acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Stewart v. Utah Public Service Comm'n*, 885 P.2d 759, 782 (Utah 1994) (quoting James W. Moore et al., *Moore's Federal Practice* ¶ 54.77 (2d ed. 1972)).

¶ 34 Here, because neither party has made the required showing or otherwise persuaded us that equity requires an award of attorney fees, we decline to exercise our equitable power in the present case. Accordingly, we deny each party's request for attorney fees incurred on appeal.

### CONCLUSION

¶ 35 For the foregoing reasons, we conclude that the district court erred in denying Bonnie's motions to set aside the default judgment and the sheriff's sale and in awarding attorney fees. We therefore vacate the default judgment and remand for further proceedings consistent with this opinion.