2018 UT App 56

# THE UTAH COURT OF APPEALS

BLACKHAWK TOWNHOUSES OWNERS ASSOCIATION INC.,
*Appellee,*

*v.*

J.S.,
*Appellant.*

Opinion
No. 20160618-CA
Filed April 5, 2018

Second District Court, Ogden Department
The Honorable W. Brent West
No. 140901810

Zachary C. Myers, Attorney for Appellant

Richard W. Jones and Taylor R. Jones, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES DAVID N. MORTENSEN and DIANA HAGEN
concurred.

CHRISTIANSEN, Judge:

¶1     J.S. appeals from the district court's order denying her
motion to set aside a judgment as void. J.S. contends that the
judgment was void because, as an incompetent person without
an appointed guardian, J.S. lacked notice of the suit. J.S. asserts
that the plaintiff, Blackhawk Townhouses Owners Association
Inc., had knowledge she was incompetent and should have been
required to move for appointment of a guardian for her. We
conclude that J.S. has failed to show clear error in the district
court's findings that J.S. was not incompetent and that
Blackhawk did not have sufficient knowledge of her
impairments such that it should have instigated competency and
guardianship proceedings. We therefore affirm.

BACKGROUND

¶2    In 2002, J.S. bought a condominium in the Blackhawk Townhouses. Her ownership obligated her to pay assessments, or HOA fees, to the Blackhawk Townhouses Owners Association.

¶3    On March 14, 2014, Blackhawk brought suit against J.S., alleging that she had failed to pay HOA fees for a significant period of time resulting in arrears exceeding $7,000. On April 2, 2014, Blackhawk served J.S. with the summons and complaint.

¶4    On April 8, 2014, J.S. sent a personally signed letter to Blackhawk claiming that she had suffered strokes and seizures, that she was "unable to communicate," and that her estimated recovery time would be at least six weeks. J.S. attached a letter from a doctor explaining that J.S. was "unable to communicate verbally due to her complex neurologic diagnosis." On April 10, 2014, J.S. filed a request for continuance in the district court, indicating that she had suffered from strokes and seizures and that, "for me to regain my speech and memory it is estimated it will take six weeks in the rehabilitation unit of the hospital." Nevertheless, on April 15, 2014, J.S. filed a pro se answer. Like the April 8, 2014 letter and the April 10, 2014 continuance motion, J.S. signed the answer personally.

¶5    Approximately six weeks later, on June 4, 2014, Blackhawk filed a motion for summary judgment. On June 10, 2014, attorney J. Keith Henderson entered an appearance on behalf of J.S. However, Henderson did not file an amended answer or respond to the motion for summary judgment. On July 7, 2014, in part because no response had been received by the court, the district court granted the motion for summary judgment in favor of Blackhawk, awarding it a total of $19,409.76, including late fees, interest, and attorney fees. Collection efforts ensued, resulting in a sheriff's sale of J.S.'s condominium on August 11, 2014.

¶6     On April 21, 2015, Henderson filed a motion to set aside the judgment against J.S. The motion sought "to set aside the final judgment entered by the court on June 17, 2011" and asked that "[J.S.] be permitted to file an answer." The motion asserted that "at all times during the pendency of this action [J.S.] was and is mentally incompetent and unable to understand the nature of the consequences of this case or of participating and aiding in a defense." The motion then stated that it was supported "by the accompanying Memorandum" but no memorandum was actually attached. Blackhawk opposed the motion, noting (1) the absence of a memorandum providing legal support, (2) that J.S. had already filed an answer, (3) that, since June 10, 2014, J.S. had been represented by counsel but had not raised a claim of incompetency, (4) that no documentation supporting J.S.'s claim of incompetency had been provided, (5) the non-existence of a June 17, 2011 judgment, and (6) that the motion to set aside had not been filed within a reasonable time as required by rule 60(b) of the Utah Rules of Civil Procedure. The court did not rule on the motion, apparently due to J.S.'s pending bankruptcy proceedings.

¶7     On December 2, 2015, attorney Zachary C. Myers filed an appearance on behalf of J.S. On January 14, 2016, he filed a second motion to set aside the judgment against J.S. on incompetency grounds. The main points in the motion were (1) that J.S. had been incompetent at the time the lawsuit was first filed, (2) that Blackhawk knew or should have known J.S. was incompetent, and (3) that Blackhawk had failed to provide valid notice of the lawsuit to J.S. because "'[n]otice to a person known to be an incompetent who is without the protection of a guardian does not' meet the Constitutional requirement of due process." (Quoting *Covey v. Town of Somers*, 351 U.S. 141, 146–147 (1956).)

¶8     The second motion to set aside was accompanied by an affidavit by H.B. In that affidavit, H.B. identified himself as J.S.'s

partner. According to H.B., J.S. had suffered brain damage as a result of falling down a flight of stairs in 2008.[1] H.B. stated that he had prepared the letters and the answer signed by J.S. *See infra* ¶ 26 note 3. He also stated that he had filed a petition for guardianship of J.S. on August 6, 2014, and that the petition had been granted on April 22, 2015.

¶9     The district court held hearings on March 16, 2016, and April 14, 2016. At the hearings, J.S. argued that Blackhawk had notice of J.S.'s incompetency and therefore should have moved for appointment of a guardian. Blackhawk denied that it had such notice and argued that it was not required to move for appointment of a guardian for J.S. when J.S. had signed and filed responsive pleadings and was represented by counsel. The court heard testimony from H.B., Henderson, two members of Blackhawk's board of directors, and Matthew Koyle, an attorney who had negotiated with Blackhawk on J.S.'s behalf but whom J.S. had not been retained J.S. in any formal capacity.

¶10     On May 27, 2016, the court entered findings of fact and conclusions of law denying J.S.'s motion to set aside the judgment. The court found that H.B.'s testimony was "not believable or credible" and that "[n]o reliable facts or testimony were presented to the Court in support of a claim that [J.S.] was incompetent at the time the complaint was filed or the summary judgment was entered." It ruled that, because "[n]o Court determined [J.S.] was incompetent until April 22, 2015," "[p]rior to that date it is presumed [J.S.] was legally competent." The court further found that there were "no facts or testimony to support a claim that Blackhawk knew or should have known that [J.S.] was incompetent at the time the complaint was filed or

---

1. At some point prior to 2010, H.B. had been involved in an attempt to appoint a guardian for J.S. The proposed guardianship was not granted.

the summary judgment was entered." The court therefore ruled that Blackhawk did not have a duty to move for appointment of a guardian:

> Blackhawk and it[s] legal representatives had no duty to take any action or act in behalf of [J.S.] or respond to concerns expressed about her claim of disability since Blackhawk and its legal representatives had no personal contact with her, had not met her, did not know her, did not represent her, had no reasonable ability to make any informed conclusions regarding her mental state, and only received vague and conflicting comments and communications about her mental state from those who personally knew her and dealt with her. The people who had information on her mental [state] took no legal action in her behalf in this matter. Rather, those who dealt with [J.S.] personally continued to represent her in this matter and to deal with Blackhawk in a manner that represented to Blackhawk that she was capable of participating in these proceedings in a competent manner.

¶11 Consequently, the court concluded that the judgment was not void and that neither motion to set aside the judgment was filed within a reasonable time, as required by rule 60(b) of the Utah Rules of Civil Procedure. J.S. appeals.

ISSUES AND STANDARDS OF REVIEW

*Voidness*

¶12 J.S. first contends that the district court erred by failing to set aside the judgment entered against her as void for lack of notice. *See* Utah R. Civ. P. 60(b)(4). J.S. asserts that she lacked

notice of the proceedings against her because she was incompetent. She then argues that the district court should have found that Blackhawk knew of her incompetence and thus should have known that she had never received valid notice of the suit against her. J.S. asserts that this court "should review the record directly and determine whether the judgment is void, without giving any discretion to the District Court's findings of fact."

¶13    We disagree with the assertion that we may review the findings of fact for correctness. J.S. argues that the correctness standard applies based on her reading of *Migliore v. Livingston Financial, LLC*, 2015 UT 9, ¶ 25, 347 P.3d 394. Specifically, she draws support from our supreme court's statement that "the propriety of the jurisdictional determination, and hence the decision not to vacate, becomes a question of law upon which we do not defer to the district court." *Id.* (quotation simplified). J.S. also highlights the supreme court's discussion of the record evidence. *See, e.g., id.* ¶ 27 ("The record demonstrates that Mr. Migliore had actual notice of all of Livingston's claims[.] Mr. Migliore attached a copy of the summons and complaint to his motion[.]").

¶14    If we were to read *Migliore* in this manner, every party who loses a rule 60(b)(4) motion could, on appeal, have an appellate court substitute its cold-record assessment of witness credibility and conflicting evidence for that of the district court. Doing so would ignore the district court's privileged position to judge the credibility of witnesses and to weigh conflicting evidence. *See Lunt v. Lance*, 2008 UT App 192, ¶ 19, 186 P.3d 978; *see also State v. Calliham*, 2002 UT 86, ¶ 23, 55 P.3d 573 ("We review most evidentiary rulings and questions of fact with deference to the trial court based on the presumption that the trial judge, having personally observed the quality of the evidence, the tenor of the proceedings, and the demeanor of the parties, is in a better position to perceive the subtleties at issue

than we can looking only at the cold record.") Making independent factual findings on appeal would improperly transform the nature of appellate review into an appellate trial.

¶15 Our review of *Migliore* reveals that the supreme court did not engage in such fact finding. The *Migliore* court indicated that *after* a judgment has been found void, the district court has no discretion as to the legal remedy: "the district court has no discretion with respect to a void judgment because the determination that a judgment is void implicates the court's jurisdiction." *Migliore*, 2015 UT 9, ¶ 25. But the supreme court did not substitute its own factual findings for those of the district court. While *Migliore* did discuss the record directly, it did so in the context of reviewing for clear error. *See id.* ¶ 27 (discussing the undisputed facts and concluding that "the evidence on the record clearly indicates that Mr. Migliore had notice").

¶16 We conclude that, even in the context of a rule 60(b)(4) challenge, the district court's purely factual findings are afforded deference. *See C504750P LLC v. Baker*, 2017 UT App 36, ¶ 7, 397 P.3d 599 (stating that, in reviewing the denial of a motion to set aside judgment for voidness, "[w]e review the court's underlying [factual] findings for clear error"). It is only with respect to the legal conclusion and remedy that the district court lacks discretion. *See id.* Accordingly, we review for clear error the factual findings of the district court, and we review for correctness both the court's legal conclusion regarding voidness that flows from those findings and the court's selection of an appropriate remedy.

*Evidentiary Error*

¶17 J.S. also contends that the district court erred by "refusing to let a fact witness testify regarding the veracity of another witness's testimony." We review the legal questions underlying the admissibility of evidence for correctness and the district

court's decision to admit or exclude evidence for an abuse of discretion. *State v. Griffin*, 2016 UT 33, ¶ 14, 384 P.3d 186.

## ANALYSIS

### I. Voidness as a Consequence of Incompetency

¶18    J.S. contends that the judgment was void because she did not receive effective notice of the suit. Specifically, she asserts that her receipt of the summons and complaint did not impart effective notice to her, because, as an incompetent person, she was unable to comprehend the nature of the proceedings against her.

¶19    A judgment is void if the judgment was entered without the notice required by due process. *Judson v. Wheeler RV Las Vegas, LLC*, 2012 UT 6, ¶ 18, 270 P.3d 456 ("A judgment is void under rule 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter[] or parties or [if] the judgment was entered without the notice required by due process." (citation and internal quotation marks omitted)). Due process is not satisfied by "[n]otice to a person known to be an incompetent who is without the protection of a guardian." *Covey v. Town of Somers*, 351 U.S. 141, 146 (1956) (holding that mere compliance with the service of process statute was insufficient to satisfy the notice requirement when the recipient was known to be incompetent because, "when notice is a person's due, process which is a mere gesture is not due process" and "the means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (quotation simplified)).

¶20    Here, the district court ruled that J.S. was presumed competent until April 22, 2015, when a court of competent jurisdiction found her to be incompetent and appointed a guardian. J.S. does not directly challenge the court's

determination,[2] and her failure to do so is fatal to her contention on appeal.

_____

2. J.S. does not identify this ruling in her statement of issues presented on appeal. Accordingly, she does not identify the standard of review or discuss the preservation of a challenge to the ruling. However, J.S. appears to challenge the ruling in a single paragraph several pages into section VII of her brief (titled "Marshalling of Evidence").

In that paragraph, J.S. refers to one of her trial exhibits consisting of three medical records. She argues that these records "refer repeatedly to [her] brain injury and diminished mental capacity" and thus contradict the court's finding that "[n]o reliable facts or testimony were presented to the Court in support of a claim that [J.S.] was incompetent at the time the complaint was filed or the summary judgment was entered." Each of the three medical records is present only in fragmentary form: the first is marked "Page 2 of 2," the second is marked "Page 3 of 4," and the third is marked "P.002/004."

The first record documents that J.S. became mute overnight and was tentatively diagnosed as having suffered a stroke. The record is primarily concerned with CT scans, MRI scans, and an EEG test. It notes that "we cannot really confirm a psychosis or altered mental status as opposed to aphasia at this point." It does not directly touch upon competency and appears to be dated either July 2 or July 3 of 2014 (approximately four months after Blackhawk filed and served the complaint and one month after Blackhawk moved for summary judgment).

The second record states, under the heading "communication," that J.S. had "[s]ignificant problems with speech fluidity and pronunciation. Some word finding problems." But the record further states that J.S. was able to "express[] her primary concern," and that "[i]t is hard to tell how

(continued…)

¶21    If, as the court found, J.S. was legally competent until April 22, 2015, she received proper notice of the proceedings on April 2, 2014, when Blackhawk served her with the summons and complaint. The fact that J.S. was later deemed legally incompetent—after she filed an answer, after Blackhawk filed a summary judgment motion, after summary judgment was granted, and more than six months after the resulting sheriff's

---

(…continued)
much is deficit and how much is aphasia." The second record is dated May 16, 2014.

The third record is titled "Speech Therapy Report." It documents J.S.'s speech problems and inability to communicate verbally but does not delve into her cognitive abilities. It is dated April 18, 2014.

On appeal, J.S. asserts that these records show that "[t]he District Court's finding that [J.S.] was competent, was in error and was against the weight of the evidence." But the district court actually found that there were no reliable facts or testimony showing J.S. was incompetent at the time the complaint was served. The court could have reasonably determined that medical records made after Blackhawk served its complaint were not relevant to determining J.S.'s competence at the time of service. Or the court may have concluded that reports of speech impairments were not pertinent to determining competency. Or the court could have reasoned that individual pages of medical reports, shorn of their context, were not reliable. In any event, J.S.'s single paragraph statement regarding this point is inadequate to carry her burden of persuasion because she does not identify any supporting authority and does not even identify it as an issue on appeal. *See, e.g.*, *Bank of America v. Adamson*, 2017 UT 2, ¶ 13, 391 P.3d 196 ("An appellant that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion on appeal.").

sale—did not retroactively rob her of that notice. Accordingly, we agree with the district court that, based on its factfinding to which we defer, J.S.'s due process right to notice was satisfied and that the resulting judgment was not void.

## II. Blackhawk's Duties

¶22   J.S. urges this court to adopt a rule that "[i]f a party learns that there is a significant risk that a defendant may be incompetent, that party must take additional reasonable steps to ensure notice was effective, including notifying the court and asking the Court to appoint a guardian." On the basis of the proposed rule, J.S. argues that Blackhawk had a duty to move for appointment of a guardian for her because, in her view, Blackhawk knew or should have known that she was incompetent. Although unstated, we presume that the thrust of this argument is that, had Blackhawk begun competency proceedings during the pendency of the foreclosure case, J.S. would have been ruled legally incompetent before the district court granted judgment, and therefore the alleged lack of effective notice would have been brought to light.

¶23   J.S. devotes much of her brief to outlining the exact contours of the proposed rule. But under even the broadest version of such a rule, J.S. would still have to show that Blackhawk knew of J.S.'s alleged incompetency during the pendency of the suit. To do so, she would have to demonstrate clear error in the district court's findings that Blackhawk lacked "any knowledge or information that should or could have led [Blackhawk] to know that [J.S.] was disabled or incompetent" and that "[t]he court does not find by a preponderance of the evidence that Blackhawk knew or should have known that [J.S.] was incompetent at any time in 2014." *See* Utah R. Civ. P. 52(a)(4) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous[.]"); *accord C504750P LLC v. Baker*, 2017 UT App 36, ¶ 7, 397 P.3d 599.

Findings of fact are clearly erroneous only if no reasonable factfinder could review the evidence presented and arrive at the disputed finding. *See, e.g.*, *Gardner v. Madsen*, 949 P.2d 785, 790 (Utah Ct. App. 1997) (holding that "factual findings are clearly erroneous only if they are against the clear weight of the evidence" and that "the existence of conflicting evidence does not give rise to clear error as long as evidence supports the trial court's decision" (quotation simplified)).

¶24   J.S. argues that the district court "erred by making a factual determination that '[n]o credible evidence or testimony has been presented that Blackhawk knew or should have known [J.S.] was disabled to the degree that Blackhawk should have been obligated to take action[.]'" (First alteration in original.) To show error, she highlights several pieces of evidence that could support a contrary finding: an email from H.B. to Blackhawk's attorneys, a doctor's letter filed with the court, H.B.'s testimony that he verbally told Blackhawk's attorneys that J.S. needed a guardian, an email and phone call from Koyle to Blackhawk's attorneys, and Henderson's testimony.

A.    J.S.'s and H.B.'s Communications

¶25   H.B. emailed Blackhawk's attorneys on March 18, 2014, a few days after Blackhawk filed suit. In that email, H.B. stated that "[J.S.] was admitted to the hospital a week ago" but gave no further details. H.B. also testified that he called Blackhawk's attorneys and told them J.S. needed a guardian. And an April 8, 2014 doctor's letter filed with the court stated that "[J.S.] is unable to communicate verbally due to her complex neurologic diagnosis [and] should be excused from external responsibilities at this time."

¶26   The district court found that H.B.'s testimony was not credible and that the remaining evidence was inconclusive as to whether Blackhawk knew or should have known of J.S.'s alleged incompetency, in light of the fact that shortly afterwards J.S.

communicated in writing with Blackhawk, stating that she would need six weeks' recovery time, and filed a signed pro se answer.[3]

B.    Koyle's Communications

¶27    Koyle emailed Blackhawk's attorneys on April 28, 2014. In the email, he stated: "[M]y observation is that [J.S.'s] understanding of this matter and my involvement is quite limited." Koyle also testified that he called one of Blackhawk's attorneys and told him that J.S. "seemed completely out of touch with what was going on and didn't understand what I was doing."

¶28    The district court found that "Koyle did not provide notice to Blackhawk that [J.S.] was disabled or not capable of understanding the nature of the proceedings." In his testimony, Koyle had denied telling Blackhawk's attorneys explicitly that J.S. was incompetent: "And I mean in hindsight saying that [J.S.] probably isn't competent to be involved in a legal proceeding might have been a smart thing to say, but that's not what I said." And despite the absence of a guardian, Koyle admitted that he had entered into settlement negotiations on J.S.'s behalf.

---

3. J.S. asserts that, in considering her communications with Blackhawk and her answer, the court should have given more weight to H.B.'s claim that he prepared those documents for J.S. and that she merely signed them. However, as noted, the court found H.B.'s testimony not credible. And even if true, H.B.'s authorship was not known to Blackhawk at the time and is therefore irrelevant to considering whether Blackhawk's quantum of knowledge during the suit was such that Blackhawk knew or should have known of J.S.'s later-alleged incompetency.

C.     Henderson's Communications

¶29    Henderson testified that, shortly after beginning his representation of J.S., he talked to Blackhawk's attorneys and "mentioned at that time about the possibility of a conservatorship or a guardianship because [he] felt somebody had to be appointed to represent her as her guardian at that time." Henderson further testified that Blackhawk's attorney "indicated that . . . there [was] another attorney who had represented [J.S.]" who had "raised the issue of her competency." And Henderson may have testified that, although he had been retained as J.S.'s attorney, he had been unsure whether she was mentally competent to hire an attorney.[4]

---

4. When asked whether he had informed Blackhawk's attorneys about a possible conservatorship, Henderson testified,

> We discussed about the conservatorship with regard to having filed the one that was going to be filed because I indicated I would. I just hadn't been physically able to do anything at that time [due to surgery]. I subsequently, and again point out that, you know, if her competency, and I know I had, you know, he had mentioned that, enter an appearance and was sending things to me, and I, you know, my issue was that she was incompetent and I didn't feel that my appearance that I'd enter into before the surgery, that, you know, I had the authorization or her appointment as counsel because I didn't think she had the mental competency to, you know, hire an attorney.

On appeal, J.S. characterizes this testimony as "Mr. Henderson told [Blackhawk's attorney] that, in his opinion, he could not represent [J.S.] because she did [not] have the mental competency to hire an attorney." But Henderson appears to have

(continued…)

¶30 The district court found that "Henderson's testimony at the evidentiary hearing and in his affidavit filed in this case is self-serving and unreliable." The court found that Henderson's testimony was an attempt to "shift any responsibility for his actions and decisions in representing [J.S.] to Blackhawk's attorney[s]."[5] J.S. does not challenge this credibility finding. And at oral argument before this court, J.S. conceded that appellate review does not extend to revisiting credibility determinations.

¶31 While J.S. discusses this evidence at length, she relegates contrary evidence to a separate section near the end of her opening brief. There, J.S. concedes that some record evidence supported the district court's findings; specifically, testimony by Blackhawk's board members and Blackhawk's attorneys, the documents signed and filed by J.S., and the testimony of two attorneys who worked on J.S.'s behalf (Henderson and Koyle). She responds to each identified piece of contrary evidence with an assertion that the court should not have found it credible.

---

(…continued)
been testifying as to his own belief in J.S.'s competency, not as to what he told Blackhawk's attorneys. In any event, the court did not find Henderson's testimony credible, noting that it appeared to be self-serving.

5. Even if Henderson's testimony had been found credible, it does not show that Blackhawk knew or should have known J.S. was incompetent at the time it served its complaint on J.S. Instead, the testimony suggests only that Blackhawk knew that Henderson feared there was a risk J.S. was incompetent. And Blackhawk could reasonably have concluded that Henderson's initial fears had been alleviated by subsequent events because Henderson did not file a petition seeking guardianship or incompetency and did not even inform the court of the risk of incompetency.

However, as we have noted above, the court's decisions to find some evidence credible and other evidence not credible is generally unassailable on appeal.

¶32 The contrary evidence credited by the court paints a compelling picture that Blackhawk did not have actual knowledge of incompetency and that any suspicion Blackhawk may have had was defused by the actions of J.S., H.B., and the attorneys associated with or retained by J.S. For example, although J.S. sought an extension of time due to her hospital stay, she then filed a pro se answer and motion to dismiss, ostensibly prepared and signed by her. And although Koyle and Henderson hinted that J.S. might need a guardian appointed, they both apparently felt she was competent enough to communicate her desire to have them act on her behalf in the lawsuit.

¶33 We conclude that competent evidence supported each of the district court's findings. To be sure, contrary evidence was also presented. But it is the province of the factfinder to resolve evidentiary conflicts, and the mere existence of evidence contradicting the court's findings does not render the findings clearly erroneous. *See, e.g.*, *Gardner v. Madsen*, 949 P.2d 785, 790 (Utah Ct. App. 1997). Accordingly, J.S. has failed to demonstrate clear error in the district court's finding that Blackhawk did not know and did not have reason to know of J.S.'s alleged incompetency during the pendency of the suit.

¶34 As noted above, Blackhawk's knowledge—imputed or actual—is a requisite showing under any formulation of the rule J.S.'s urges us to adopt. Because J.S. has not shown that Blackhawk knew or should have known of her alleged incompetency, her claim would fail no matter what version of the proposed rule applied. Consequently, resolution of this case does not require adoption, modification, or rejection of the proposed rule. We leave for another day the question of what

additional steps a plaintiff must take to ensure adequate notice when the plaintiff knows or has reason to know of a defendant's alleged incompetency.

### III. Whether Blackhawk Took Reasonable Steps

¶35   J.S. also contends that "Blackhawk did not take reasonable steps to ensure notice required by due process." This contention is predicated on the assumption that Blackhawk knew or had reason to know that J.S. was incompetent and that the normal service of process was therefore insufficient to ensure actual notice. But, as we have explained, J.S. has not shown that she was incompetent at the time Blackhawk filed the suit or served the complaint, and she has not shown that Blackhawk knew or had reason to know of such incompetence. Therefore, the default rule that proper service of process imparts notice to the recipient applies. *See, e.g., Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1074–75 (Utah 1998) (holding that the recipient defendant bears the burden of showing that service was invalid). Moreover, the fact that J.S. filed a signed pro se answer and a motion to dismiss effectively dispelled any incertitude Blackhawk might have had that J.S. lacked notice of the suit. *Cf. Bel Courtyard Invs., Inc. v. Wolfe*, 2013 UT App 217, ¶ 13, 310 P.3d 747 ("But even where a party has not been adequately served with process, a defect in service can be waived if the party makes a general appearance.").

¶36   Because J.S. has not shown that Blackhawk should have known she lacked notice due to incompetence, she cannot successfully challenge Blackhawk's failure to take additional steps to ensure she received notice.

### IV. Guardianship

¶37   J.S. next contends that, "[b]ecause [J.S.] was incompetent, she could not be a party to the case without a guardian." But, as we have noted, J.S. has not successfully demonstrated error in

the court's finding that she was competent at the time Blackhawk served the complaint on her. And because she was legally competent, Utah Rule of Civil Procedure 17(b) did not require her to appear via a guardian.

## V. Representation

¶38   J.S. contends that "[t]he fact that [J.S.] was represented does not excuse Blackhawk's due process obligation." She argues that her retention of an attorney "does not excuse Blackhawk's obligation to request a guardian for [J.S.] when it learned she could not understand the proceedings."

¶39   However, as discussed above, *supra* ¶¶ 32–33, Blackhawk did not learn at the relevant time that J.S. could not understand the proceedings. Any suspicion Blackhawk may have had regarding J.S.'s inability to understand the proceedings was reasonably dispelled by J.S.'s election to file a pro se answer and motion to dismiss, ostensibly prepared and signed by herself, that addressed the merits of those proceedings. Accordingly, even assuming J.S.'s proposed rule was in effect, Blackhawk had no legal obligation to request a guardian because it was not aware of "a significant risk that a defendant may be incompetent." *See supra* ¶¶ 22, 34.

¶40   Moreover, the district court did not rule that J.S.'s retention of an attorney excused any of Blackhawk's legal obligations; rather, the court considered the effect such retention reasonably had on Blackhawk's knowledge. When J.S.'s own counsel (who had the most contact with her) continued to act on her behalf without a guardian, it was reasonable for opposing counsel (who had only limited contact with her) to assume that any prior concerns about her competency had been resolved.

¶41   The district court considered J.S.'s representation by counsel as evidence relevant to determining a factual question. It did not, as J.S. now asserts, rule that such representation relieved

Blackhawk of a legal burden. We therefore reject J.S.'s contention in this regard.

## VI. Meritorious Defense and Timeliness

¶42   The district court ruled that J.S. had not presented a meritorious defense in rule 60(b) motion to set aside the judgment as void and that the motion, filed seventeen months after entry of the judgment, had not been filed within a reasonable time. J.S. contends that she "does not need a meritorious defense" because a void judgment "must be set aside regardless of whether there is [a] meritorious defense." She further argues that "a motion to set aside [a judgment as void] is always timely."

¶43   J.S.'s argument is predicated on the notion that, because she was incompetent, she did not receive effective notice of the suit, and that the district court therefore lacked jurisdiction over her. *See, e.g.*, *Cooper v. Dressel*, 2016 UT App 246, ¶ 3, 391 P.3d 338 (explaining that a "district court lacks personal jurisdiction when there has not been effective service of process"). But the court did not find J.S. incompetent until more than a year *after* Blackhawk initiated this suit and more than nine months after the district court granted summary judgment, and J.S. has not shown that such a finding was erroneous. *See supra* ¶ 20. We therefore need not and do not address the hypothetical questions of whether J.S., if she had been incompetent when she was served, would need to demonstrate timeliness[6] and a

---

6. We note that the "within a reasonable time" requirement may still apply when the motion is brought pursuant to rule 60(b)(4) on the ground that the judgment is void. *See Matter of Estate of Willey*, 2016 UT 53, ¶ 16, 391 P.3d 171 ("It is an unsettled question in Utah whether all claims that judgments are void under rule 60(b)(4) are subject to the reasonable time limit (continued…)

meritorious defense in her rule 60(b) motion to set aside the judgment as void.

## VII. Rebuttal Testimony

¶44    J.S. contends that the district court "wrongfully excluded testimony that was being offered to rebut facts presented by another witness."

¶45    A Blackhawk board member testified that she had stopped by a yard sale conducted by J.S. in 2014 and had talked to J.S. She further testified that, on that occasion, J.S. had called her by name and that J.S.'s speech was slurred but understandable. The board member testified that there was no indication that J.S. had any mental incapacity and that she had attributed J.S.'s slurred speech to being intoxicated. The board member explained that when J.S. had been on Blackhawk's board in 2002 and 2003, J.S. had come to several meetings while intoxicated. J.S. then called H.B. to testify. On direct examination, counsel for J.S. asked H.B. several questions related to the board member's testimony:

> Q      [H.B.], would you like to say anything in response to [the board member's] testimony?
>
> A      Well, I just felt that she thought [J.S.] had the slurry speech because she was drinking.
>
> Q      And what do you think about that?
>
> A      Well, it's not the case. [J.S.] has difficulty with her speech.

---

(…continued)
imposed by rule 60(c)."); *see also id.* ¶¶ 16–19 (discussing but declining to rule on this issue).

Q    Do you think that what [the board member] said is true? Do you think she truly thought that [J.S.] was drunk?

[Blackhawk's attorney]: I'll object, your Honor.

THE COURT: Sustained. We don't get to comment on the truth or veracity of some other witness.

¶46   On appeal, J.S. suggests an exception to the general rule that a witness may not testify as to the veracity of another witness. Specifically, J.S. relies on *State v. Thompson*, which held, "[O]nce the defendant offers evidence or makes an assertion as to any fact, the State may cross-examine or introduce on rebuttal any testimony or evidence which would tend to contradict, explain or cast doubt upon the credibility of his testimony." 2014 UT App 14, ¶ 30, 318 P.3d 1221 (quotation simplified). On this basis, J.S. asserts that, "[w]henever a witness makes a factual assertion, evidence that rebuts that factual assertion is admissible."

¶47   "Asking a [witness] to comment on the veracity of another witness is improper." *See State v. Davis*, 2013 UT App 228, ¶ 38, 311 P.3d 538. This is because "[s]uch a question is argumentative and seeks information beyond the [witness's] competence." *See id*. In other words, a witness whose testimony contradicts another witness's testimony can explain how his or her testimony differs, and such a witness may even explain why his or her testimony should be afforded more weight. But it would be improper speculation for the witness to offer an opinion, unsupported by factual evidence, as to whether the previous witness was being untruthful as opposed to being mistaken or confused. *Cf. State v. Emmett*, 839 P.2d 781, 787 (Utah 1992) (holding that it was improper to ask a witness whether another witness was lying because doing so "suggests to the jury

that a witness is committing perjury even though there are other explanations for the inconsistency").

¶48   The exception advanced by J.S. would swallow the general rule. If we were to characterize as testimonial evidence a witness's claim that "the other witness is lying," never-ending rounds of fact-less "rebuttal" testimony could ensue.

¶49   The key distinction overlooked by J.S. is the difference between speculation and testimony based on actual knowledge. Rebuttal evidence is still restricted to competent evidence. Asking a witness to comment on the veracity of a prior witness generally seeks speculation, because the witness has no factual basis for differentiating between the possible reasons for the prior witness's contrary testimony, e.g., the prior witness's poor memory, differing vantage point, or outright lie. *See Emmett*, 839 P.2d at 787. Where the witness has no factual basis for claiming the prior witness suffered from a failure of honesty rather than a failure of memory, the witness's speculation that the prior witness lied does not have "any tendency to make a fact more or less probable than it would be without" the speculation. *See* Utah R. Evid. 401(a). Such speculative testimony is therefore not admissible evidence.

¶50   Consequently, while it is true that evidence that rebuts the factual assertion is admissible, *see Thompson*, 2014 UT App 14, ¶ 30, asking a witness to comment on the veracity of another witness's testimony does not introduce new facts and is therefore not admissible evidence. We conclude that the district court here correctly applied the rule and recognized that J.S. was attempting to elicit an inadmissible speculative opinion rather than factual evidence.

## VIII. Attorney Fees on Appeal

¶51   Blackhawk seeks an award of its attorney fees incurred on appeal. "[W]hen a party is entitled to attorney fees below and

prevails on appeal, that party is also entitled to fees reasonably incurred on appeal." *Dillon v. Southern Mgmt. Corp. Ret. Trust*, 2014 UT 14, ¶ 61, 326 P.3d 656 (citation and internal quotation marks omitted). Blackhawk received attorney fees below pursuant to an attorney fees clause in the declaration of condominium and Utah Code section 57-8-49. Because Blackhawk has prevailed on appeal, it is entitled to an award of its attorney fees reasonably incurred on appeal.

¶52    Blackhawk furthermore requests that we deem the appeal frivolous, as defined by rule 33 of the Utah Rules of Appellate Procedure, and seeks an order requiring J.S.'s attorney to pay for Blackhawk's attorney fees. Although ultimately unsuccessful, we do not consider J.S.'s appeal entirely frivolous and therefore deny the request to hold her attorney personally responsible for Blackhawk's attorney fees.

CONCLUSION

¶53    J.S. has not shown error in the district court's conclusion that she was legally competent until her adjudication as incompetent on April 22, 2015. Therefore, she has not shown that she lacked actual notice of the lawsuit after she was served with the summons and complaint on April 2, 2014. We affirm the court's finding that Blackhawk did not know and did not have reason to know J.S. suffered from cognitive issues rendering her incompetent. And we affirm the court's decision to exclude testimony regarding the veracity of another witness.

¶54    We remand for the limited purpose of calculating Blackhawk's attorney fees reasonably incurred on appeal and appropriately augmenting Blackhawk's existing judgment.

¶55    Affirmed.

_____